*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BLACK/MILTON/WILLIAMS, Minors.

UNPUBLISHED
May 20, 2025
11:16 AM

No. 368712
Wayne Circuit Court
Family Division
LC No. 2021-000024-NA

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

Respondent mother appeals as of right the order terminating her parental rights to her three minor children, TMM, WDW, and TMB, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failed to provide proper care despite financial ability to do so), and (j) (substantial risk of harm). We affirm.

## I. FACTS

On August 14, 2020, Child Protective Services (CPS) received a report that respondent had left her children alone for two to three days in a vacant apartment building where they had been living. At the time, TMM was ten years old, WDW was seven years old, and TMB was almost two years old. There were no working utilities and there was little to no food in the home. On January 6, 2021, the Department of Health and Human Services (DHHS) filed a petition requesting that the children be removed from respondent's care due to ongoing concerns over housing and substance abuse. The trial court found probable cause to remove the children from respondent's care based on her unstable housing, which posed a significant risk of harm to the children. TMM was placed with her father, under the care and supervision of DHHS. TMB and WDW were placed in a foster home together. Respondent entered a plea of admission to the allegations made in the petition. Respondent admitted to abusing Percocet for a year. The trial court found that the children came under its jurisdiction under MCL 712A.2(b)(1) (failure to provide proper care and support), (2) (home is unfit), and (3) (risk of substantial harm). Respondent was ordered to obtain employment and housing, complete parenting classes, obtain a psychological evaluation and

-1-

substance abuse assessment, and complete drug screens or substance abuse classes if necessary. TMM was placed in foster care after her father's death in April 2021.

By late 2021, respondent struggled to consistently attend services. She also had trouble consistently attending parenting time. TMB and WDW reacted negatively to attending respondent's parenting times. Respondent was testing positive for cocaine.

In July 2022, the trial court allowed respondent to have overnight parenting time with TMM. In August 2022, after respondent had consistent negative drug screens and had obtained housing, TMM was returned to respondent's care and TMB and WDW spent five days a week with respondent. However, a complaint was made that respondent had hit TMB in September 2022. TMB and WDW were placed back in their previous foster care home full-time. Also, respondent's lease expired, and she had not provided her case worker with an updated lease. Concerns were raised that respondent was not feeding the children at her parenting times. On March 13, 2023, petitioner filed a petition requesting that TMM be removed from respondent's care. Parenting time was occurring at respondent's home, but she did not consistently answer the door when it was meant to occur. By March 2023, respondent was in the process of being evicted. On April 4, 2023, TMM was again removed from respondent's care because TMM was routinely missing school, and respondent had no plan for subsequent housing after being evicted.

On June 5, 2023, petitioner filed a supplemental petition for termination of respondent's parental rights to the children. Respondent was not participating in individual counseling, substance abuse counseling, or infant mental health services for TMB. She had attended about half of her drug screens. She had tested positive for fentanyl, cocaine, and opiates since the start of the case. Since August 2022, respondent had attended 24 out of 69 offered parenting times. TMB and WDW were doing well in their foster home. TMM was placed with her stepmother and was also doing well. On October 23, 2023, the trial court terminated respondent's parental rights to TMM, WDW, and TMB under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## II. DISCUSSION

Respondent argues that the trial court erred in finding statutory grounds to terminate her parental rights because it did not consider that the children were placed with relatives and treated her depression as a sign of neglect. We disagree.

### A. STATUTORY GROUNDS

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709, 713; 846 NW2d 61 (2014). Factual findings are clearly erroneous when this Court has a firm and definite conviction that a mistake has been made. *Id*. at 709-710.

Parental rights may be terminated if more than 182 days have passed since the initial dispositional order, the conditions leading to the adjudication continue to exist, and there is no reasonable likelihood that the conditions will be remedied in a reasonable amount of time. MCL 712A.19b(3)(c)(*i*). The conditions continue to exist when the totality of the evidence supports a finding that there has not been a meaningful change in the conditions that led to the trial court

-2-

taking jurisdiction over the children. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

It is undisputed that more than 182 days passed since the initial dispositional order was entered in this case. MCL 712A.19b(3)(c)(*i*). The initial dispositional order was entered in February 2021. The hearing to terminate respondent's parental rights was held on August 9, 2023, September 11, 2023, and October 23, 2023. The order to terminate respondent's parental rights was entered on October 23, 2023.

Respondent's housing instability and substance abuse, which led to the initial removal of the children, continued to exist at the time of the hearing and were unlikely to be rectified in a reasonable period of time. MCL 712A.19b(3)(c)(*i*); *Williams*, 286 Mich App at 272. In January 2021, respondent and her children were squatting in an abandoned building with no working utilities. Respondent continued to struggle with housing over the course of the case. She claimed to have bought a house in March 2021, but it did not work out. In August 2022, respondent obtained suitable housing. However, the lease expired in September 2022. In January 2023, she had not provided the foster care workers with an updated lease. By March 2023, respondent was in the process of being evicted for missed rent payments. In June, respondent was living with a relative. As of September 2023, respondent was living in a one-bedroom apartment that DHHS had deemed appropriate for her alone, but not for her three children. However, by October 2023, respondent claimed she had been scammed and did not have housing. Respondent had not maintained suitable housing as required by her parent-agency plan. *Williams*, 286 Mich App at 272.

Respondent also continued to struggle with substance abuse over the course of the case. In the period before the January 4, 2023 review hearing, respondent tested positive for cocaine twice and opiates once. She tested positive for fentanyl in July 2023. Over the course of the case, she had missed approximately half of her drug screens, which are presumed to be positive. Though respondent had completed some substance abuse counseling, she did not benefit because she continued to test positive for drugs. The trial court did not err in holding that the housing instability and substance abuse that led to the initial removal of the children had not been rectified. *Id*. Therefore, it was appropriate for the trial court to find a statutory ground for termination under MCL 712A.19b(3)(c)(*i*). *White*, 303 Mich App at 709.

The trial court must find by clear and convincing evidence that at least one statutory ground for termination of parental rights exists. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). Termination of respondent's parental rights was appropriate based on MCL 712A.19b(3)(c)(*i*). *Id*. We need not address the other bases upon which respondent's parental rights were terminated.

## B. REASONABLE EFFORTS AT REUNIFICATION

Respondent also argues that the trial court erred in finding that petitioner had made reasonable efforts at reunification that were tailored to her depression. We disagree.

To preserve an argument related to reasonable efforts at reunification, a respondent must object to the services when they are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Respondent never objected to the services offered to her, so the issue of reasonable efforts

is not preserved for appellate review. *Id.* An unpreserved claim of error in a termination case is reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). An obvious error must have occurred that prejudiced the outcome of the proceedings. *Id.* at 9. The error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (citation and quotation marks omitted).

In general, the petitioner must make reasonable efforts to reunify families and prevent the termination of parental rights. *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022); MCL 712A.19a(2). Absent aggravating circumstances, termination of parental rights is not appropriate unless reasonable efforts at reunification have been made. *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). The petitioner "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). The respondent has the responsibility to participate in and benefit from the offered services. *Frey*, 297 Mich App at 248.

DHHS also has obligations under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq. Hicks/Brown*, 500 Mich at 86. "Title II of the ADA requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Id.* DHHS must therefore make reasonable accommodations to its practices to avoid discrimination on the basis of a disability, unless doing so would fundamentally modify a provided service. *In re Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021). Efforts at reunification cannot be reasonable if DHHS has not modified its "standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Hicks/Brown*, 500 Mich at 86. "When challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered." *Sanborn*, 337 Mich App at 264. Under the ADA, a disability means "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 USC 12102(1)(A).

Petitioner made reasonable efforts at reunifying respondent with her children. Petitioner created a parent-agency plan for respondent which consisted of a psychological evaluation, any recommended follow-up, individual counseling, a substance abuse assessment, substance abuse treatment, attending TMB's infant mental health services, and drug screens. She needed to maintain suitable housing, a legal source of income, and contact with her caseworkers. *Hicks/Brown*, 500 Mich at 85-86. Respondent did not fully participate in and benefit from her parent-agency plan. *Frey*, 297 Mich App at 248.

Pertinently, respondent was never diagnosed with depression throughout the duration of this case. Her psychological evaluation did not indicate that she had any mental illnesses. Respondent mentioned being depressed at the hearing to terminate her parental rights. However, respondent was never diagnosed with depression. Therefore, it was not plainly erroneous for DHHS to provide respondent with an unmodified parent-agency plan. *Utrera*, 281 Mich App at 8. Even assuming that respondent did suffer from depression, she fails to argue what alternative services could have been provided or that she would have fared better had other services been

offered.  *Sanborn*, 337 Mich App at 264.  Thus, the trial court did not err in holding that reasonable efforts had been made to reunite respondent with her children.  *Utrera*, 281 Mich App at 8.

## C. RELATIVE PLACEMENT

Respondent further argues that the trial court erred in finding that termination of her parental rights was in the best interests of the children because the children were already in stable placements with relatives and respondent had a bond with her children.  We disagree.

This Court reviews the trial court's findings on the best interests of a child and its final determination for clear error.  *White*, 303 Mich App at 709.  Factual findings are clearly erroneous when this Court has a firm and definite conviction that a mistake has been made.  *Id*. at 709-710.  When determining if termination is in a child's best interests, the trial court may consider the bond between the child and the respondent, the respondent's parenting ability, the child's need for stability and permanency, and the advantages of the child's current placement.  *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012).  The trial court may also consider any history of domestic violence, the respondent's compliance with their parent-agency plan, the respondent's visitation history with the child, the child's well-being in their current placement, and the potential for adoption.  *White*, 303 Mich App at 714.  A child's placement with relatives weighs against the termination of a respondent's parental rights.  *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).  If a child is old enough to express their preferences, it is appropriate for the trial court to consider them.  *In re Medina*, 317 Mich App 219, 238-239; 894 NW2d 653 (2016).

Termination of respondent's parental rights was in the best interests of the children.  TMM had been in her father's care when he passed away, and had then been in a series of placements with relatives, foster parents, and respondent, before being placed with her stepmother.  TMM was doing well and was bonded with her stepmother, who was willing to adopt her.  The trial court acknowledged that TMM was placed with a relative, but found that other factors weighed in favor of termination.

TMB and WDW had experienced trauma from respondent not showing up for her parenting time.  TMB and WDW had consistently done well in their foster care placement and were bonded with their foster parents, who were willing to adopt them.  As discussed above, respondent had only partially complied with and benefitted from her parent-agency plan.  Respondent inconsistently attended her parenting times, even when they occurred in her house.  TMB and WDW had been out of their mother's care for over two years and needed permanency.

-5-

Though the trial court found that respondent clearly loved her children, and respondent felt she had a bond with them, the best interests of the children controls. *Olive/Metts*, 297 Mich App at 42. Therefore, the trial court did not clearly err in finding that termination of respondent's parental rights was in the best interests of the children. *White*, 303 Mich App at 709.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford